**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHARESTATES INVESTMENTS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>CROSS BRIDGE TITLE LLC and OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,<br><br>Defendants. | No. 25cv18266 (EP) (CF)<br><br>**MEMORANDUM ORDER** |

**PADIN, District Judge.**

Plaintiff Sharestates Investments, LLC ("Sharestates"), a commercial lender, made four mortgage loans in 2022 to Rosko Group Newark LLC ("Rosko") to finance the purchase of four properties in Newark and East Orange, New Jersey. D.E. 1 ("Complaint" or "Compl.") ¶¶ 5–6. Defendant Old Republic National Title Insurance Company ("Old Republic"), the title insurer, issued a title insurance loan policy for each transaction and issued Sharestates a closing protection letter ("CPL") for each property's closing.[1] *Id.* ¶¶ 6–7; *see* D.E. 7-13, Ex. J ("CPLs").[2] Defendant

[1] A CPL is distinct from a title insurance policy. Typically, a title insurance policy insures the state of title, indemnifying against loss from potential issues with the title. *See Walker Rogge, Inc. v. Chelsea Title & Guar. Co.*, 116 N.J. 517, 528 (1989). The CPL insures the closing itself. A CPL is the insurer's separate promise to reimburse the lender for actual loss caused by the settlement agent's failure to follow the lender's written closing instructions or by that agent's fraud or dishonesty in handling the lender's funds or documents. *See Sears Mortg. Corp. v. Rose*, 134 N.J. 326, 350 (1993). Though issued together, they are distinct contracts with distinct triggers and conditions. Plaintiff sues only on the CPLs.

[2] Exhibit J, to which the CPLs are attached, is a single seventeen-page filing comprising a cover page and four separate CPLs, one for each transaction. *See* CPLs. Each letter is four pages and is internally paginated 1/4 through 4/4. The Court has compared the four and finds their operative

Cross Bridge Title LLC ("Cross Bridge") served as the escrow agent for the four transactions. *Id.* ¶ 20. Rosko then defaulted on all four loans. *Id.* ¶ 14. Around $4 million in loan principal remains unpaid, and Sharestates alleges it has "little to no hope of recovery from the borrower." *Id.* ¶¶ 18, 25.

According to Sharestates, the CPLs required Defendants to advise Sharestates of any change in ownership in the 180 days leading up to the properties' closings. *Id.* ¶ 7. Sharestates alleges that the properties underwent additional title transactions before or around the time of the closings that artificially inflated the purchase prices of the properties and that Cross Bridge knew about these transactions but remained silent, leading Sharestates to make loans it otherwise would have refused. *Id.* ¶¶ 8–13.

The Complaint asserts two counts against the title insurer, Old Republic: Count One asserts negligence, both directly and on a vicarious liability theory, and Count Two asserts breach of the CPLs. *Id.* ¶¶ 19–31. Old Republic moves to dismiss both counts. D.E. 7-1 ("Motion" or "Mot.").[3]

For the reasons below, the Court will **GRANT** the Motion and **DISMISS** Counts One and Two ***without prejudice*** as to Old Republic.

---

terms identical. The letters differ only in their transaction-specific header fields and in a courtesy copy notation appearing on three of the four. The Court accordingly cites to the first CPL by its internal pagination for all properties. CPLs at 1–4.

[3] Old Republic's Notice of Motion was filed at D.E. 7. Sharestates opposes the Motion, D.E. 32 ("Opposition" or "Opp'n"), and Old Republic replies, D.E. 35 ("Reply"). The Court decides the Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

## I. BACKGROUND[4]

In 2022, Sharestates made four loans to Rosko to purchase four New Jersey properties:

- A $1,050,000 loan for 416–418 Park Avenue in East Orange (the "Park Avenue Property");
- A $1,193,000 loan for 304 South Orange Avenue in Newark (the "South Orange Avenue Property");
- A $1,123,000 loan for 524 Central Avenue in Newark (the "Central Avenue Property"); and
- A $681,000 loan for 1040 Bergen Street in Newark (the "Bergen Street Property") (collectively, the "Properties"). Compl. ¶¶ 5–6.

In total, Sharestates loaned Rosko $4,047,000 for the Properties. *Id.* Old Republic issued title insurance loan policies and CPLs to Sharestates for the Properties. *Id.* ¶¶ 6–7. Sharestates alleges that Cross Bridge served as the escrow agent for the four transactions and was Old Republic's agent in issuing the title loan policies. *Id.* ¶¶ 6, 20.

The CPLs that Old Republic issued are on New Jersey's approved form, NJRB 6-07, and each identifies Cross Bridge as the "Settlement Service Provider." *See* CPLs. In each CPL, Old Republic agreed to indemnify Sharestates for "actual loss of Funds incurred in connection with the closing" of the transaction, but only where the loss was "solely caused by" one of two things:

[4] The facts in this section are taken from the factual allegations in the Complaint, which the Court presumes to be true for purposes of resolving the Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court also considers the CPLs themselves, which are properly before the Court.

1) Cross Bridge's failure to comply with Sharestates' written closing instructions "that relate to" the disbursement of funds necessary to establish the status of title or the validity, enforceability, or priority of the insured mortgage; or

2) "fraud, theft, or misappropriation" by Cross Bridge in handling Sharestates' funds or documents, "only to the extent" that such conduct "adversely affects the status of the Title to the Land or to the validity, enforceability, or priority of the lien of the Insured Mortgage." CPLs at 1–2.

The CPLs define "Funds" as "the money received by [Cross Bridge] for the Real Estate Transaction." *Id.* at 2. The CPLs disclaim liability for losses resulting from the fraud, dishonesty, or negligence of any party to the transaction, from "the lack of creditworthiness of any borrower," and from "the failure of any collateral to adequately secure a loan." *Id.* at 3. The CPLs also state that "[i]n no event shall [Old Republic] be liable for a loss if the written notice of a claim is not received by [Old Republic] within one year from the date of the transmittal of Funds." *Id.*

Under the CPLs, Defendants were required to advise Sharestates if a change in ownership of a property occurred within 180 days of its closing. Compl. ¶ 7. According to Sharestates, the South Orange Avenue, Central Avenue, and Bergen Street Properties "had multiple closings, either contemporaneous with the closing of Sharestates' mortgage loan or soon thereafter, for different sale amounts." *Id.* ¶¶ 9–11. These transactions were "clearly known to Cross Bridge," yet Cross Bridge "failed to advise Sharestates" of those transactions. *Id.* ¶¶ 9–11, 13. Additionally, the Park Avenue Property's chain of title "was written erroneously" and "list[ed] multiple different properties and does not provide a clear title path." *Id.* ¶ 12. As a result, the Properties' values were artificially inflated, allowing Rosko to borrow more than Sharestates would have agreed to lend had it been aware of those transactions. *Id.* ¶¶ 8, 13.

Rosko then defaulted on the Property loans. *Id.* ¶ 14. Sharestates alleges that it has "little to no hope of recovery from the borrower" and claims at least $4,047,000 in unpaid principal, plus interest, costs, and fees. *Id.* ¶¶ 18, 25, 31.

Sharestates filed the Complaint on December 8, 2025, asserting negligence against Cross Bridge and Old Republic (Count One), breach of contract against Cross Bridge and Old Republic (Count Two), and failure to pay a claim against National Casualty Company (Count Three).[5] *See* Complaint. With its Motion, Old Republic attached ten exhibits, D.E. 7-3 ("Muller Decl."): four state-court foreclosure complaints Sharestates and a related entity filed against the borrowers, *id.* Exs. A–D; Sharestates' January 18, 2024, written notice of claim to Old Republic ("January 2024 Notice"), *id.* Ex. E; three sheriff's reports of sale and a final judgment of foreclosure, *id.* Exs. F–I; and the four CPLs, *id.* Ex. J. The Motion is fully briefed.

## II. LEGAL STANDARD

For a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pleaded factual allegations as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). "[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In short, courts may consider any "document integral to or explicitly relied upon in the complaint." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

---

[5] Count Three was asserted against National Casualty Company only. The parties stipulated National Casualty's voluntary dismissal without prejudice, and the Court so ordered on March 10, 2026. D.E. 24, 38. Cross Bridge has answered the Complaint. D.E. 18.

Courts may not consider "[f]actual claims and assertions raised by a defendant." *Doe v. Princeton Univ.*, 30 F.4th 335, 345 (3d Cir. 2022).

To survive a Rule 12(b)(6) challenge, a plaintiff's claims must be facially plausible, meaning "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although there is no "probability requirement," a plaintiff's claims must do more than present "a sheer possibility that a defendant has acted unlawfully." *Id.* The allegations must include "more than labels and conclusions." *Twombly*, 550 U.S. at 555. An affirmative defense can support dismissal at the pleading stage only if the defense is "apparent on the face of the complaint." *Schmidt*, 770 F.3d at 249 (citation modified).

## III. DISCUSSION

Sharestates asserts that Old Republic is liable for Cross Bridge's alleged failure to inform Sharestates that three of the Properties had additional closings contemporaneously with or shortly after Sharestates' own closings, and that the chain of title Cross Bridge reported for the fourth was erroneous. Sharestates also asserts that the CPLs require Old Republic to cover the $4,047,000 in unpaid principal it lost after Rosko defaulted, because that loss arose from Cross Bridge's failure to follow Sharestates' written closing instructions. The Court disagrees with Sharestates on both counts.

The Court first determines which of the parties' submissions it may consider, then turns to the counts. The economic loss doctrine bars Count One—which asserts negligence by Old Republic—because the Complaint pleads no duty that Old Republic owed Sharestates beyond those the CPLs impose, and the negligent performance of a contractual undertaking is a breach of contract—not a tort. That is so regardless of whether Cross Bridge acted as Old Republic's agent,

a question the Court does not reach. Count Two—which asserts breach of contract—fails on the CPLs' own terms. The CPLs indemnify the actual loss of Funds entrusted to Cross Bridge, not the principal that Sharestates is unable to recover from Rosko. And the conduct Sharestates pleads falls outside of the CPLs' two categories for indemnification by Old Republic.

**A. Documents the Court Considers**

As a threshold matter, Sharestates argues that the Motion rests on materials outside the pleadings and therefore cannot be considered at the pleading stage. Opp'n at 3–5. That is true of one document that Old Republic attaches to its Motion, but it is not true of the others.

*First,* the CPLs are properly before the Court. Both counts against Old Republic are based on the CPLs. The Complaint alleges that Old Republic issued "valid CPLs," that the CPLs obligated Old Republic to indemnify Sharestates, and that Old Republic breached the CPLs. Compl. ¶¶ 7, 27–31. A plaintiff that sues based on a contract cannot keep the contract's terms from the Court by declining to attach the rest of that contract. *See Schmidt*, 770 F.3d at 249. Nor can a plaintiff rely on the provisions of a contract that favor it and ask the Court to disregard the remainder of that contract. *See Mele v. Fed. Rsrv. Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) ("[A] plaintiff cannot maintain a claim by extracting an isolated statement from a document and placing it in the complaint." (citation modified)). Because Sharestates relies on the CPLs, and they are integral to the Complaint, the Court will consider the CPLs in their entirety.

The foreclosure filings—complaints, reports of sale, and a final judgment from the New Jersey Superior Court, *see* Muller Decl. Exs. A–D, F–I—are matters of public record, and the Court may take notice of their existence. *See Schmidt*, 770 F.3d at 249.

The January 2024 Notice, which Sharestates filed with Old Republic seeking repayment of the defaulted loans, is different. Muller Decl. Ex. E. The Complaint never mentions the Notice,

which is neither attached to the Complaint nor a public record, and no claim relies on it. The Notice matters only to Old Republic's defense that Sharestates gave notice too late. *See Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 273–74 (3d Cir. 2016) (holding the district court should not have considered a document that was "integral only to the Defendants' attack on [Plaintiff's] claims"). The Court therefore does not consider the Notice.

**B. The Economic Loss Doctrine Bars Count One**

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *LM Ins. Corp. v. Favor Servs. Inc.*, No. 24-5932, 2025 WL 3451333, at *7 (D.N.J. Dec. 1, 2025) (citation omitted). In other words, "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 316 (2002) (citation omitted). Negligent performance of a contractual undertaking, without more, is a breach of contract—not a tort. *Id.* at 316–17.

The economic loss doctrine has particular force for title insurers. In New Jersey, "the rule has been that a title company's liability is limited to the policy and that the company is not liable in tort for negligence in searching records." *Walker Rogge*, 116 N.J. at 535. "The relationship between a title company and an insured is 'essentially contractual.'" *PNC Bank v. Sadek*, No. 11-1302, 2016 WL 7042193, at *10 (D.N.J. Mar. 11, 2016) (citing *Walker Rogge*, 116 N.J. at 535). A title company can, however, be liable for negligence in addition to its liability under a policy where the company "voluntarily assume[s]" additional duties. *Walker Rogge*, 116 N.J. at 541.

Here, the Complaint pleads no voluntarily assumed duty by Old Republic beyond the CPLs. Sharestates' account of Old Republic's involvement with the Properties begins and ends with the loan policies and CPLs. Old Republic issued the loan policies through Cross Bridge. Compl. ¶¶

6–7. Old Republic then issued the CPLs to Sharestates itself. *Id.* But that is the extent of Old Republic's involvement. The Complaint does not allege that Old Republic searched title for Sharestates, gave closing instructions, attended the closings, or handled any money related to the closings. Put simply, Sharestates fails to allege that Old Republic "voluntarily assumed" any duty beyond those the CPLs impose. *See Fin. of Am. Com. v. GEM Real Estate Sols.*, No. A-3568-20, 2023 WL 2542462, at *4 (N.J. Super. Ct. App. Div. Mar. 17, 2023) (comparing a title agency allegedly retained "as a title searcher with an independent duty" to the insured with an insurer that acted "just as the issuer of a title insurance policy").

Sharestates attempts to overcome this pleading defect by arguing that Old Republic is vicariously liable for Cross Bridge's alleged silence. Sharestates alleges that Cross Bridge, "on its own behalf, and on behalf of Old Republic," owed a "duty to disclose the true nature and number of transactions involving the Properties," and that the duty arose from Cross Bridge's "fiduciary relationship with Sharestates as the escrow agent on the deals." Compl. ¶ 20. But Sharestates describes the same obligation differently in its Opposition, stating that Old Republic "owed a contractual duty to disclose the true nature of transactions involving the Properties." Opp'n at 5. A party may not amend its pleading through a brief, but it may concede the legal character of the duty it has pleaded. *See Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (holding that a complaint may not be amended by the briefs filed in opposition to a motion to dismiss); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 n.20 (3d Cir. 2006) (noting that statements in a party's brief may operate as binding judicial admissions). Sharestates' concession of Old Republic's involvement as "contractual" decides Count One.

A claim that rests on the same conduct as the contract claim and seeks the same economic loss as the contract claim is in fact a contract claim. *Saltiel*, 170 N.J. at 316–17. Thus, Sharestates'

attempt to impute a contractual duty to Old Republic produces a contract claim against Old Republic—not a tort—and is therefore barred by the economic loss doctrine.[6]

Nor does Rule 8(d) save the claim. Sharestates is right that it may plead negligence and breach of contract in the alternative, "regardless of consistency." Fed. R. Civ. P. 8(d)(2)–(3); Opp'n at 8–9. But Rule 8(d) governs the form of a pleading, not the substance of the duties the law imposes. So while Rule 8(d) permits a plaintiff to plead inconsistent claims, it does not supply a duty independent of the contract where none exists.

In sum, Count One is a contract claim pleaded in tort and is therefore barred by the economic loss doctrine. The Court will therefore **DISMISS** Count One ***without prejudice***.

### C. The CPLs Do Not Require Indemnification

In Count Two, Sharestates asserts that Old Republic breached the CPLs by refusing to indemnify Sharestates for Cross Bridge's failure to disclose the additional transactions recorded against each Property, and that Sharestates' loss is the principal it advanced to Rosko that has not been recovered. Compl. ¶¶ 7–12, 28–31. Whether the CPLs require indemnification turns on two questions: (1) what the CPLs treat as a covered loss, and (2) what conduct triggers indemnity.

As noted above, a CPL is a contract between the title insurer and the lender. *See GE Capital Mortg. Servs., Inc. v. Privetera*, 346 N.J. Super. 424, 434 (App. Div. 2002). "The interpretation of an unambiguous contract can be resolved on a motion to dismiss, and the question of whether a

[6] The Court does not decide whether Cross Bridge acted as Old Republic's agent at the closings. If Cross Bridge *was not* Old Republic's agent, Count One fails for want of a relationship on which to rest vicarious liability. If Cross Bridge *was* Old Republic's agent, Count One would still fail because the duty imputed to Old Republic is a contractual one and the economic loss doctrine bars its enforcement in tort. *See Saltiel*, 170 N.J. at 318 (holding that a plaintiff "cannot convert basic contract claims into negligence claims in order to create a basis for the imposition of personal liability on corporate officers").

contract is ambiguous is a question of law." *Deshpande v. Taro Pharm. U.S.A., Inc.*, No. 10-865, 2010 WL 1957869, at *2 (D.N.J. May 13, 2010) (citing *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002)). CPLs, like title insurance policies, should be "liberally construed in favor of the insured and strictly construed against the insurer." *N.J. Lawyers' Fund for Client Prot. v. Stewart Title Guar. Co.*, 203 N.J. 208, 217 (2010) (citation omitted). The CPL provisions in this case are unambiguous. So construed, the CPLs answer both questions against Sharestates, and each answer independently defeats Count Two.

*First*, the Complaint does not allege an actual loss of funds. The CPLs indemnify "actual loss of Funds incurred in connection with the closing," and "Funds" are defined as the money Sharestates transmitted to Cross Bridge to close each loan. CPLs at 1–2. But the Complaint does not allege that any of those Funds went astray. It alleges that the four transactions closed, that Rosko took title to the Properties and became obligated to repay Sharestates, and that Rosko later stopped paying. Compl. ¶¶ 5–6, 14. The Complaint does not allege that the closing funds were diverted, withheld, or misdirected. What Sharestates lost is repayment of "unpaid principal on the mortgage loans." *Id.* ¶ 25. That is a credit loss on a defaulted loan—not a loss of the funds entrusted to the closing agent. And the CPLs expressly exclude liability for "the lack of creditworthiness of any borrower" or "the failure of any collateral to adequately secure a loan." CPLs at 3. Old Republic also did not guarantee either "that the mortgaged [Properties were] worth the amount of the mortgage or that the mortgage debt w[ould] be paid." *RTC Mortg. Tr. 1994 N-1 v. Fid. Nat'l Title Ins. Co.*, 58 F. Supp. 2d 503, 534 (D.N.J. 1999); N.J. Stat. Ann. § 17:46B-11 (prohibiting a title insurer from guaranteeing, "in any manner whatsoever," the payment of principal or interest on obligations secured by mortgages).

*Second*, the Complaint does not allege a cause for Sharestates' alleged loss covered by the CPLs. Under the CPLs, Old Republic must indemnify a loss of Funds "solely caused by" either:

1) Cross Bridge's failure to comply with written closing instructions "that relate to" the disbursement of funds necessary to establish title status or the mortgage's validity, enforceability, or priority; or

2) "fraud, theft, or misappropriation" by Cross Bridge in handling Sharestates' funds or documents, "only to the extent" that conduct adversely affects title or lien status. CPLs at 2.

Old Republic's liability, therefore, turns not on whether Cross Bridge did something wrong, but whether the alleged wrong falls within one of those two categories. Cross Bridge's alleged conduct does not fall into either.

Sharestates alleges that Cross Bridge was to advise it if ownership of a Property changed hands in the 180 days leading up to the closing (a "flip") and that Cross Bridge never did. Compl. ¶¶ 7–8. The Complaint alleges that three of the four Properties—South Orange Avenue, Central Avenue, and Bergen Street—were flipped, either on the day of Sharestates' own closing or shortly after, that Cross Bridge recorded those transactions, and that Cross Bridge said nothing about them. *Id.* ¶¶ 9–11. As to the fourth property, Park Avenue, Sharestates alleges that the chain of title Cross Bridge reported "list[ed] multiple different properties and does not provide a clear title path." *Id.* ¶ 12.

Those allegations, however, fail to identify a loss of Funds with a cause covered by the CPLs. The closing instructions Sharestates describes amount to a monitoring requirement directing Cross Bridge to track the property and report back. Such an instruction does not relate to "the disbursement of funds necessary to establish" title status or the mortgage's validity,

enforceability, or priority. Nor does Sharestates plead fraud, theft, or misappropriation. In fact, Sharestates brings a negligence action. The Complaint's only reference to "fraud or dishonesty" merely recites the CPLs' coverage language without alleging facts of fraudulent conduct by either Defendant. *Id.* ¶¶ 28, 30. The same is true of the Complaint's allegation that Cross Bridge's silence "related to the status of title to the Properties and/or the viability, validity, enforceability, and/or priority of the liens on the Properties." *Id.* ¶ 24. A formulaic recitation of contractual triggers does not state a plausible claim. *See Iqbal*, 556 U.S. at 678.

Sharestates argues that the nondisclosures "directly implicated" title and lien status—meeting the first "relates to" category—and that it would not have made the Property loans had it known of the flips. Compl. ¶ 8; Opp'n at 2, 7. The Court is unpersuaded by Sharestates' but-for causation argument. On that logic, any breach of any instruction that would change the lender's mind "relates to" title, and therefore every credit loss would become a covered loss for which the title insurer would be liable. *See First Am. Title Ins. Co. v. Vision Mortg. Corp.*, 298 N.J. Super. 138, 144 (App. Div. 1997) (observing that where the lender received the benefit of its bargain, a residual loss "would not be related to the [escrow agent's] misconduct and would thus fall outside the scope of the [CPL]").

Nor does the Complaint plead that title status or the mortgage's validity, enforceability, or priority was impaired, as required by the CPLs. CPLs at 2. The closest the Complaint comes to pleading such an impairment is the allegation that the Park Avenue chain of title was erroneous. Compl. ¶ 12. But the duty Sharestates invokes is Cross Bridge's "duty to allow [Rosko] to have clear and unencumbered title to the Property"—a duty running to the borrower, Rosko, not to Sharestates as the lender. *Id.* As to Sharestates' own interest, the Complaint pleads no defect in

title held against Sharestates, and no mortgage alleged to be invalid, unenforceable, or subordinated.[7]

Because Sharestates fails to allege that Old Republic breached the CPLs, the Court will **DISMISS** Count Two ***without prejudice***.

**D. Leave to Amend**

Old Republic asks the Court to dismiss both counts *with prejudice*, contending that no amendment could cure the Complaint's defects. Mot. at 23–25. In this Circuit, a curative amendment must be permitted after a Rule 12(b)(6) dismissal unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Phillips*, 515 F.3d at 245. Old Republic has not shown futility. As to Count One, a title insurer may face tort liability where it voluntarily assumed duties beyond its contracts. *Walker Rogge*, 116 N.J. at 541. Whether Old Republic assumed any such duty is a factual question the current Complaint does not address. As to Count Two, the Complaint invokes "fraud or dishonesty" without alleging facts of fraud, theft, or misappropriation.

Both counts are therefore dismissed ***without prejudice***. While the Court grants Sharestates leave to amend its claims against Old Republic, *see Phillips*, 515 F.3d at 236, the Court cautions Plaintiff that "any amendment must have a good faith basis on which [p]laintiff can proceed," *Uygur v. Gensler*, No. 24-975, 2024 WL 3497888, at *4 (E.D. Pa. July 19, 2024). Because Cross Bridge has answered, D.E. 18, any amendment of the claims against Cross Bridge requires Cross Bridge's written consent or leave of Court. *See* Fed. R. Civ. P. 15(a)(2).

[7] The Court does not reach Old Republic's alternative argument that the CPLs' one-year notice condition independently bars Count Two. That defense turns on when Sharestates gave written notice of its claim, a date that appears only in the January 2024 Notice, an exhibit the Court has declined to consider, so the defense is not apparent on the face of the Complaint.

## IV. CONCLUSION AND ORDER

For the reasons set forth above,

**IT IS** on this 10th day of September, 2026,

**ORDERED** that Old Republic's Motion to Dismiss, D.E. 7, is **GRANTED**; and it is further

**ORDERED** that Counts One and Two of the Complaint are **DISMISSED *without prejudice*** as to Old Republic; and it is finally

**ORDERED** that Sharestates may file an amended complaint as to its claims against Old Republic within **45 days** of this Order.

Evelyn Padin

Evelyn Padin, U.S.D.J.